UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

PAULA A. SMITH                    :
                                  :
        v.                        :        C.A. No. 08-407ML
                                  :
MICHAEL J. ASTRUE                 :
Commissioner of the Social Security :
Administration                    :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

        This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits

("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff, who is proceeding

pro se, filed a one-page, hand-written Complaint on October 29, 2008 seeking to reverse the decision

of the Commissioner.  A briefing schedule was set by Order issued on August 28, 2009.  (Document

No. 9).  Plaintiff did not file a brief as Ordered.  On November 30, 2009, the Commissioner filed a

Motion for an Order Affirming the Decision of the Commissioner.  (Document No. 16).  Plaintiff

replied to the Commissioner's Motion on December 8, 2009.  (Document No. 17).

        This matter has been referred to me for preliminary review, findings and recommended

disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties'

submissions and independent legal research, I find that there is substantial evidence in this record

to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning

of the Act.  Consequently, I recommend that the Commissioner's Motion for an Order  Affirming the Decision of the Commissioner (Document No. 16) be GRANTED.

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for DIB on February 8, 2007, alleging disability since April 12, 2001.[1]  (Tr. 87-93).  Her date last insured for DIB was March 31, 2002.  The application was denied initially (Tr. 59-61) and on review.  (Tr. 51-58).  Plaintiff requested an administrative hearing.  (Tr. 68).  On June 2, 2008, Administrative Law Judge Gerald Resnick (the "ALJ") held a hearing at which Plaintiff, represented by counsel and a vocational expert ("VE") appeared and testified.  (Tr. 17-49).  The ALJ issued a decision unfavorable to Plaintiff on June 16, 2008.  (Tr. 4-16).  The Appeals Council denied Plaintiff's request for review on September 10, 2008.  (Tr. 1-3).  A timely appeal was then filed with this Court.

## II.      THE PARTIES' POSITIONS

Plaintiff argues that she was treated "unfairly" because the ALJ "misunderstood" the nature of her Mary Kay business and the extent of her physical/mental restrictions and pain.  (Document No. 2).

The Commissioner disputes Plaintiff's claims and argues that the administrative record supports the ALJ's Step 2 determination that there was insufficient medical evidence presented of any "severe" physical or mental impairments prior to the expiration of Plaintiff's insured status – March 31, 2002.

---

[1] Plaintiff also filed an unsuccessful application for DIB on November 15, 1999 which was denied by an ALJ on April 11, 2001.  (Tr. 7, n.1 and 99).  Plaintiff did not appeal that denial, and there is no indication in the record as to why Plaintiff waited until 2007, over six years, to pursue a second DIB application when her DIB insured status expired in early 2002.  Id.

### III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id.  The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C.      Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D.      The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

## E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.     Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1)     The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2)     Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3)     Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4)     Treatment, other than medication, for relief of pain;

(5)     Functional restrictions; and

(6)     The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

2.      **Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tienber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

V.      **APPLICATION AND ANALYSIS**

Plaintiff was forty-five years old on the date of the ALJ's decision.  (Tr. 126).  Plaintiff completed the tenth grade (Tr. 22, 50) and has previous work experience as a silk screener and a store clerk.  (Tr. 24, 110).  Plaintiff initially alleged disability due to carpal tunnel in her left and right arms, tendonitis, a bulging disk in her neck, and a problem with her left shoulder.  (Tr. 102).

On February 8, 2001, Plaintiff was seen by Dr. Alla Korennaya, a Neurologist, for headaches. (Tr. 151). Plaintiff stated that she was doing well on Pamelor and Calan, her prescription

medications.  Id.  The result of Plaintiff's physical examination was characterized as "stable," and Plaintiff indicated that her headaches had decreased in frequency.  Id.

On May 10, 2001, Plaintiff had a follow-up appointment with Dr. Korennaya for her headaches. (Tr. 150). Plaintiff's prescriptions were continued, but she was scheduled for sequential stimulator application for her neck pain and tension.  Id.

On July 19, 2001, Plaintiff again followed-up with Dr. Korennaya for treatment of her headaches. (Tr. 149). Plaintiff said she experienced headaches on a daily basis. Id. Upon physical examination, Plaintiff reported tenderness upon palpitation of her neck muscles, particularly on the left side. Id. Dr. Korennaya believed Plaintiff may have migraine headaches and prescribed her 50mg of Imitrex daily.  Id.

On August 17, 2001, Plaintiff had a follow-up appointment with Dr. Korennaya for her headaches. (Tr. 148). Dr. Korennaya noted that Imitrex worked to treat Plaintiff's symptoms. Id. Dr. Korennaya noted tenderness upon palpitation of Plaintiff's neck muscles, particularly on the left side. Id. Plaintiff was not seen by Dr. Korennaya again until July 2007, at which time he noted that Plaintiff "had a similar presentation in 2001, when she was successfully treated with Topamax for headache prevention and Imitrex." (Tr. 295).

On October 12, 2001, Plaintiff presented to NeuroHealth for a second opinion regarding her headaches. (Tr. 163-168). Plaintiff claimed to suffer from severe, daily headaches. (Tr. 165). Plaintiff's review of systems and physical examination were unremarkable. (Tr. 167). Plaintiff was noted to have full range of motion in her neck. Id. Plaintiff's neurological examination revealed that she was alert, oriented, attentive and had normal speech and memory. (Tr. 168). Plaintiff displayed normal strength, bulk, tone and coordination and her reflexes were intact. Id.

On October 16, 2001, Plaintiff underwent neurophysiological testing by Dr. Gary A. L'Europa. (Tr. 162). The results of Plaintiff's nerve conduction study and needle examination were "normal." Id.  Dr. L'Europa opined that Plaintiff demonstrated no evidence of cervical radiculopathy nor any evidence of carpal tunnel syndrome. Id.

On December 10, 2001, Plaintiff again presented to NeuroHealth with complaints of constant mild to moderate headaches. (Tr. 160-161). Plaintiff's review of symptoms and neurological exams were normal. (Tr. 161). Dr. L'Europa recommended that Plaintiff stabilize her caffeine intake, wake at the same time daily, exercise regularly, continue with physical and behavioral therapy and take Motrin and Topamax to alleviate her migraine symptoms. Id.

On December 27, 2001, Plaintiff underwent an MRI of her cervical spine.  (Tr. 316). Plaintiff's MRI results revealed normal vertebral alignment with preservation of the normal cervical lordosis. Id.  The vertebral bodies were of normal height and bone density. Id.  Plaintiff's disc spaces were preserved, the pedicles, facets and laminae were intact, and there was normal atlanto-axial articulation. Id.  The overall impression was that Plaintiff's cervical spine was "normal." Id.

On January 4, 2002, Plaintiff was again seen at NeuroHealth for headaches. (Tr. 157-159). Plaintiff reported severe headaches on a daily basis lasting approximately two to three hours. (Tr. 157). Plaintiff's review of symptoms and neurological exam were normal. (Tr. 158).  It was again recommended that Plaintiff stabilize her caffeine intake, wake at the same time daily, exercise regularly, continue with physical therapy and that she continue taking her prescription Topamax and Celexa to alleviate her symptoms. Id.

On February 21, 2002, Dr. Korennaya wrote a letter in support of Plaintiff's claim for disability benefits. (Tr. 147).  Dr. Korennaya opined that Plaintiff was "totally disabled from any

and all gainful employment and her disability [was] expected to last 12 months or longer." (Tr. 316). On March 29, 2002, Plaintiff was seen by NeuroHealth for migraine headaches.  (Tr. 155-156). Plaintiff identified her migraines as mild to moderate and occasionally severe.  (Tr. 155).  Plaintiff's review of symptoms revealed no loss of consciousness, double vision, transient loss of vision, numbness, tingling or weakness.  (Tr. 156).  Plaintiffs neurological exam also revealed normal results.  Id.

On May 22, 2002, Plaintiff was seen for a follow-up appointment at NeuroHealth for her migraine headaches.  (Tr. 152-154). Plaintiffs migraines were listed as "mild to severe" and she reported aggravation of her symptoms when walking, climbing or doing physical activity. (Tr. 152). Plaintiff's neurological examination demonstrated that she was alert, oriented, attentive and had normal speech and memory.  (Tr. 153).  Plaintiff's cranial nerves II through XII were symmetrically intact and her strength, tone, and coordination were within normal limits.  Id.  Plaintiff's sensory exam and reflexes were also within normal limits.  Id.

On February 19, 2007, Plaintiff completed a Function Report-Adult detailing her daily activities.  (Tr. 118-125).  Plaintiff described a typical day as waking up, making coffee, eating breakfast, taking a shower, making her bed, getting dressed, feeding the dog, checking on her mom and watching television. (Tr. 118).  Plaintiff said she prepared her own meals, which included soup, chicken, hamburgers, salad mixes and sandwiches.  (Tr. 120).  Plaintiff dusted, did laundry and ironed once a week, and went outside of the house three to four times a week to shop or go to appointments.  (Tr. 121).  Plaintiff said she could drive a car, drove and was capable of going out alone.  Id.  Plaintiff shopped bi-weekly in stores to buy items such as cleaning products, food and

dog food.  Id.  Plaintiff could pay bills, count change, handle a savings account and use a checkbook independently.  Id.

In completing her Function Report, Plaintiff also noted that she was capable of lifting up to ten pounds and walking one mile before stopping to rest.  (Tr. 123).  Plaintiff said she followed written and spoken instructions well and finished what she started.  Id.  Plaintiff reported no problems getting along with family, friends, neighbors or others.  Id.  Plaintiff said she took medication, talked to her mother and prayed when she was stressed.  (Tr. 124).

On February 22, 2007, Dr. Basilia Ramirez submitted a letter with respect to Plaintiff's claim for disability benefits.  (Tr. 175).  Dr. Ramirez said she treated Plaintiff for recurrent umbilical infection, depression and anxiety related to marriage during the relevant time period.  Id.  Dr. Ramirez also noted that Plaintiff expressed complaints of migraine pain and pain in the left side of her neck.  Id.  Dr. Ramirez acknowledged that she never treated Plaintiff for the conditions for which she applied for disability.  Id.

On May 2, 2007, Dr. Joseph Callaghan reviewed the evidence of record and found Plaintiff's physical impairments to be non-severe.  (Tr. 177).  Dr. Callaghan noted that Plaintiff displayed no symptoms and had not been treated for cervical disc disease, knee or shoulder problems during the relevant time period.  Id.  Dr. Callaghan also noted that Plaintiff's headaches were controlled with medication and that repeated neurological exams showed no abnormality.  Id.

On June 15, 2007, Dr. Stephen Clifford completed a psychiatric review technique form ("PRTF") relative to Plaintiff's mental condition. (Tr. 179-192). Dr. Clifford determined that there was insufficient medical evidence to find that Plaintiff had any mental impairment.  (Tr. 191). Specifically, Dr. Clifford noted that while Dr. Ramirez mentioned depression and anxiety in her

2007 letter, (Tr. 175) there was no evidence to establish Plaintiff's functioning at the time.  (Tr. 191).

On December 13, 2007, Dr. Korennaya completed a physical capacity evaluation.  (Tr. 276-279).  Dr. Korennaya opined that Plaintiff could sit and stand for three hours and walk for two hours in an eight-hour workday.  (Tr. 276).  Dr. Korennaya found that Plaintiff could lift six to ten pounds occasionally, that she could not use her left arm or hand for repetitive action, and that she could never crawl.  Id.  Dr. Korennaya noted Plaintiff's degree of pain to be "moderate to severe," and concluded that Plaintiff was precluded from all sustained work.  (Tr. 277).

On February 20, 2008, Plaintiff was referred for examination to Dr. James Sullivan, a Psychiatrist, at her then counsel's request.  (Tr. 390-394).  Dr. Sullivan determined that Plaintiff met the criteria for Generalized Anxiety Disorder and Dysthymia.  (Tr. 390).  Dr. Sullivan assessed Plaintiff a Global Assessment of Functioning (GAF) score of 46 and noted that her symptoms would "interfere with her ability to maintain the duties and functions associated with full time employment."  (Tr. 393).  Finally, Dr. Sullivan opines that Plaintiff has suffered from this level of mental impairment since 1999 but offers no specific basis for this conclusion.  (Tr. 395).

On April 29, 2008, Dr. Romina Smulever completed an Emotional Impairment Questionnaire.  (Tr. 282-283).  Dr. Smulever treated Plaintiff on two occasions, in March and April of 2008, for depression.  (Tr. 282).  Dr. Smulever noted Plaintiff's symptoms as depressed mood, anxiety, inability to concentrate, feelings of being overwhelmed and hopeless and decreased energy.  Id.  Dr. Smulever categorized the severity of Plaintiff's impairment as "moderate," and she concluded that Plaintiff could not sustain competitive employment on a full-time, ongoing basis.  (Tr. 283).

## A.    The ALJ's Decision

Plaintiff's February 8, 2007 application for DIB alleged a disability onset date of April 12, 2001. (Tr. 87).  Because Plaintiff's DIB insured status expired on March 31, 2002, the narrow issue facing the ALJ in 2008 when he ruled on Plaintiff's DIB claim was whether Plaintiff was disabled during the eleven and one-half month period from April 12, 2001 to March 21, 2002.

The ALJ decided this case adverse to Plaintiff at Step 2.  Although the ALJ concluded that Plaintiff had the medically determinable impairments of carpal tunnel syndrome, elbow tendonitis, degenerative cervical disc disease, headaches/migraines, hypertension, hyperlipidemia, obesity and depression/anxiety, he concluded that such impairments (either singly or in combination) did not meet the severity standard contained in 20 C.F.R. § 404.1521 during the insured period.  (Tr. 10-11). Thus, he found that Plaintiff was not entitled to DIB.  (Tr. 16).

Alternatively, the ALJ indicated that even if he found for Plaintiff at Step 2, the record would support a non-disability finding at Step 4 or 5.  In particular, he noted that assuming Plaintiff's impairments were severe enough on or before March 31, 2002 to limit her to light work with nonexertional limitations related to concentration and social interaction, the VE testified that such an RFC would not preclude Plaintiff from performing her past relevant work or a significant number of light/sedentary unskilled jobs.  (Tr. 15, n.5).  Accordingly, even if Plaintiff established a Step 2 error, it would likely be a harmless error on this record given the support for alternative denials at Steps 4 or 5.

## B.    Plaintiff's Appeal

Plaintiff filed this administrative action pro se after her attorney informed her by letter dated October 10, 2008 that he would not pursue any further appeal after reviewing the file because

reversal of the ALJ's decision was "unlikely." (Document No. 2-3).[2]  In her Complaint, Plaintiff argues that the ALJ "misunderstood" (1) the nature of her Mary Kay business and (2) the extent of her physical/mental restrictions and pain. (Document No. 2).  A review of the ALJ's decision reveals that he understood and accepted Plaintiff's explanation as to the Mary Kay business and concluded favorably to Plaintiff that there was inadequate evidence to show that such cosmetic sales constituted substantial gainful activity which would preclude a disability finding at Step 1.  Thus, her first ground for appeal fails, as Plaintiff actually prevailed on that point with the ALJ.

On August 28, 2009, the Court issued a Scheduling Order. (Document No. 9).  Plaintiff did not file her brief as Ordered, and a show cause hearing was held on November 5, 2009.  Plaintiff appeared at the show cause hearing and addressed the Court.  Although this case could have been dismissed due to Plaintiff's failure to comply with the Scheduling Order, the Court chose not to recommend that course of action out of deference to Plaintiff's pro se status.  Instead, Plaintiff's general comments were considered in support of her appeal, and an amended briefing schedule was issued. (Document No. 14).

In response, the Commissioner filed a Motion to Affirm with Supporting Memorandum (Document No. 16) on November 30, 2009.  Plaintiff replied on December 8, 2009 with a six-page hand-written letter.  (Document No. 17).  Accordingly, this appeal is now ripe for decision.  Although Plaintiff cited to certain pages of the Commissioner's brief, her reply does not include any citations to the administrative record as required by Local Rule Cv 7(d)(4).  In other words, Plaintiff does not identify any specific and relevant medical evidence in the administrative record which she believes is supportive of her appeal.

_____

[2]  Plaintiff also indicates that she sought representation from Binder & Binder, a national Social Security Disability law firm, but they also declined to take her case for appeal. (Document No. 17 at p. 1).

**C.      Plaintiff Has Shown No Error in the ALJ's Step 2 Determination**

The ALJ determined at Step 2 that Plaintiff was not entitled to disability benefits because her various impairments were not "severe" within the meaning of 20 C.F.R. § 404.1520 during the relevant period, i.e., the period from her alleged disability onset date – April 12, 2001 – through her date last insured – March 31, 2002.

At Step 2, an impairment is considered "severe" when it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The Commissioner has adopted a "slight abnormality" standard which provides that an impairment is "non-severe" when the medical evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Social Security Ruling ("SSR") 85-28. Although Step 2 is a de minimis standard, Orellana v. Astrue, 547 F. Supp. 2d 1169, 1172 (E.D. Wash. 2008) (citing Bowen v. Yuckert, 482 U.S. 137, 153-154 (1987)), it is still a standard and a standard on which Plaintiff bears the burden of proof. See Desjardins v. Astrue, No. 09-2-B-W, 2009 WL 3152808 (D.Me. Sept. 28, 2009). In his Step 2 analysis, the ALJ thoroughly discussed each of Plaintiff's impairments and concluded that there was insufficient medical evidence presented establishing that Plaintiff suffered a "severe" impairment during the relevant period (April 12, 2001 to March 31, 2002). (Tr. 12-15).

Because Plaintiff is representing herself in this case, the Court has not strictly enforced the briefing deadlines and filing requirements and has made a reasonable effort to understand and analyze the appeal arguments contained in Plaintiff's hand-written submission. The Court cannot, however, modify the legal standard applicable to this appeal and relieve Plaintiff of her burden of

showing that the ALJ either misapplied the law or made findings that are not supported by the record.  Plaintiff has shown neither.

Plaintiff's brief outlines her medical and personal difficulties including recent surgery and treatment for thyroid cancer, and the Court is sympathetic.  However, the deficiency in Plaintiff's argument is that she primarily discusses her impairments and symptoms in the present and then indicates that "its been like this for years" and that "nothing has changed since I applied the first time till now."  (Document No. 17 at pp. 2, 6).  Plaintiff does not specifically identify any medical evidence in the administrative record which supports her argument for the narrow time period under consideration (April 12, 2001 to March 31, 2002).  See Local Rule Cv 7(d)(4).

An ALJ may properly base his Step 2 finding on the absence of medical evidence supporting a finding that a claimant suffers from a "severe medically determinable physical or mental impairment" which "significantly limits" her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c) (emphasis added).  See also Teves v. Astrue, No. 08-246-B-W, 2009 WL 961231 (D.Me. April 7, 2009) ("[A] claimant's testimony about symptoms is insufficient to establish a severe impairment at Step 2 in the absence of medical evidence.").  At Step 2, Plaintiff bore the burden of demonstrating that she had a "medically determinable" physical or mental impairment(s) that significantly limits her ability to do basic work activity at the relevant time, i.e., prior to March 31, 2002.  Id.  The ALJ found that Plaintiff did not meet that burden, and Plaintiff has shown no error in his finding.

As noted above, the ALJ thoroughly discussed and considered the medical evidence of record.  (Tr. 11-15).  He properly applied the treating physician rule (20 C.F.R. § 404.1527(d)) and explained his reasons for giving limited weight to the opinions of treating physicians.  See Castro

v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors."). In addition, he properly exercised his discretion to give "significant probative weight" to the opinions of consulting physicians who reviewed the medical records and found no evidence of severe physical or mental impairments prior to March 31, 2002. (Tr. 13-14). In particular, on May 2, 2007, Dr. Joseph Callaghan, a medical consultant, reviewed the evidence of record and found Plaintiff's physical impairments to be non-severe. (Tr. 177). Dr. Callaghan noted that Plaintiff displayed no symptoms and had not been treated for cervical disc disease, knee or shoulder problems during the relevant time period. Id. Dr. Callaghan also noted that Plaintiff's headaches were controlled with medication and that repeated neurological exams showed no abnormality. Id. He found no evidence of any functionally significant medically determinable impairment during the relevant period. Id.

Similarly, on June 15, 2007, Dr. Stephen Clifford, a consulting Psychologist, completed a psychiatric review technique form ("PRTF") regarding Plaintiff's mental condition. (Tr. 179-192). Dr. Clifford determined that there was insufficient medical evidence to find that Plaintiff had any mental impairment during the relevant period. (Tr. 191). Specifically, Dr. Clifford noted that while Dr. Ramirez (a treating physician) mentioned, in her 2007 letter, that Plaintiff complained to her over five years earlier, on December 13, 2001, about depression and anxiety (Tr. 175), there was no evidence to establish any mental health treatment or impairment of Plaintiff's functioning at the relevant time.

The bottom line is that Plaintiff filed her DIB application nearly five years after the expiration of her insured status, and she has not shown that the administrative record supports a

finding that her impairments significantly affected her ability to engage in basic work functions from April 12, 2001 to March 31, 2002.  Thus, Plaintiff has not established any legal basis for reversing the ALJ's decision denying disability benefits, and I recommend that Defendant's Motion to Affirm (Document No. 16) be GRANTED.

## VI.    CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 16) be GRANTED.   I further recommend that the District Court enter Final Judgment in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond_____
LINCOLN D. ALMOND
United States Magistrate Judge
December 30, 2009